UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
DOCKET NO: 5:19-CV-00029-MOC

| | |
|---|---|
| **RICKEY ALLEN ROOP,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| **ANDREW M. SAUL,** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| Defendant. ) | |

**THIS MATTER** is before the Court on Plaintiff's and the Commissioner's cross-motions for Summary Judgment. For the following reasons, the Court grants Plaintiff's Motion for Summary Judgment (Doc. No. 10), denies the Commissioner's Motion for Summary Judgment (Doc. No. 11), and remands this case to the Administrative Law Judge for reconsideration.

I.     BACKGROUND

    A.     **Administrative Exhaustion**

On September 18, 2015, Plaintiff Rickey Roop protectively filed applications for disability insurance benefits under Title II, and supplemental security income under Title XVI, of the Social Security Act (the "Act"), alleging he had been disabled since December 31, 2008. (Tr. 13). Plaintiff's claims were denied initially and upon reconsideration, so he filed a written request for a hearing before an Administrative Law Judge ("ALJ"). The ALJ held a hearing on February 26, 2018, for de novo consideration of Plaintiff's claims. On March 21, 2018, the ALJ issued a decision, concluding Plaintiff was not disabled within the meaning of the Act. (Id.). The Appeals Council denied Plaintiff's request for review on February 4, 2019, rendering the ALJ's decision final and thus reviewable by this Court. (Tr. 1). Plaintiff has exhausted available

1

administrative remedies, so this case is ripe for judicial review, pursuant to 42 U.S.C. § 405(g).

B. **Sequential Evaluation Process**

The Act provides that "an individual shall be considered to be disabled . . . if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c (a)(3)(A); see id. § 423(d)(1)(A). The Commissioner uses a five-step sequential evaluation process to determine whether a claimant is disabled within the meaning of the Act:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

2. An individual who does not have a "severe impairment" will not be found to be disabled;

3. If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed impairment in Appendix 1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors;

4. If, upon determining residual functional capacity ("RFC"), the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;

5. If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience, must be considered to determine if other work can be performed.

See 20 C.F.R. §§ 404.1520, 416.920. The claimant "bears the burden of production and proof during the first four steps of the inquiry." Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). If the claimant carries its burden through the fourth step, the burden shifts to the Commissioner to show other work exists in the national economy that the claimant can perform. See id.

C. **The Administrative Decision**

The issue before the ALJ was whether Plaintiff was disabled from December 31, 2008, the

alleged disability onset date, to the decision date. To evaluate the disability, the ALJ held a video hearing where Plaintiff appeared pro se. At its inception, the ALJ asked Plaintiff if he "considered or looked into" his "right to representation." (Tr. 34). Plaintiff explained:

> I have considered [retaining counsel], but I was told that it might not be a good idea to go that route you know because it costs so much money and stuff and I need hopefully every bit of the money that I could get. If I could get it, so and possibly maybe later on I can go that route if this is denied. Is that correct?

(Id.). The ALJ responded, "Okay. That's correct," and asked, "are you prepared to go forward today without representation?" (Id.). Defendant replied: "Well I certainly hope so. I don't know what to expect, I'm just winging it." (Id.). The ALJ responded, "okay," and then provided Plaintiff with a written form to sign and thereby waive his right to retain counsel. (Id.). Plaintiff admits he signed the waiver, but that waiver is not a part of the record.

Next, the ALJ conducted the hearing, which spanned just twenty-eight minutes. (Tr. 50). During the brief hearing, Plaintiff's disabilities and symptoms went mostly unmentioned. Plaintiff volunteered that his "back . . . has been bothering [him]" and that he suffers from "diabetic nerve pain in [his] feet and hands" that keeps him from "doing normal hard jobs," but he provided no other symptom testimony. (Tr. 43). Likewise, the ALJ inquired whether Plaintiff was able to complete "household chores," but did not follow up on the alleged symptoms. (Tr. 44).

About one month after the hearing, the ALJ issued a decision, concluding Plaintiff was not disabled under the Act. Using the sequential review process, the ALJ recognized at step one that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (Tr. 15). At step two, the ALJ determined that Plaintiff suffered from Type I Diabetes Mellitus, a severe impairment. (Tr. 16). She also determined Plaintiff suffered from several non-severe impairments, including: neuropathy and nerve pain, hypercholesterolemia, gastroesophageal reflux disease, gastritis on proton pump inhibitor, hiatal hernia, and colonic polyps. As to the

3

gastritis on proton pump inhibitor, hiatal hernia, and colonic polyps, the ALJ acknowledged that these "ailments" were medically diagnosed, but reasoned they were non-severe because "the sparse medical record does not substantiate these conditions as affecting [Plaintiff]'s ability to work." (Tr. 17). Finally, the ALJ determined that Plaintiff's back pain, rheumatoid arthritis, and mental health impairments were "not medically determinable" under the Act. (Tr. 18).

At step three, the ALJ decided Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. (Tr. 18). The ALJ next found Plaintiff had the residual functional capacity to perform medium work, as defined in 20 C.F.R. §§ 404.1567 and 416.967, except that he could; lift, carry, push, and pull up to 25 pounds frequently and 50 pounds occasionally; sit up to six hours with normal breaks, and stand and/or walk for six hours with normal breaks every two hours. (Tr. 19). The ALJ also recognized that Plaintiff should avoid exposure to hazardous machinery and unprotected heights and would be best suited for an occupation without a high production quota or a fast-paced work environment. (Id.).

Based on these findings, the ALJ concluded at step four that Plaintiff was capable of performing past relevant work as a numerical control tool programmer, as that work does not require the performance of work-related activities precluded by Plaintiff's residual functional capacity. (Tr. 23). The ALJ alternatively made a step-five finding that other jobs exist in significant numbers in the national economy that Plaintiff could perform, including laundry laborer, industrial sweeper-cleaner, and laundry worker. (Tr. 24–25). Because such work was not precluded by Plaintiff's residual functional capacity, the ALJ held that Plaintiff was not disabled within the meaning of the Act. (Tr. 25).

## II.     DISCUSSION

In considering cross-motions for summary judgment, this Court "examines each motion separately, employing the familiar standard" provided by Federal Rule of Civil Procedure 56. Desmond v. PNGI Charles Town Gaming, 630 F.3d 351, 354 (4th Cir. 2011). Thus, each motion is reviewed "on its own merits 'to determine whether either of the parties deserve judgment as a matter of law.'" Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (citation omitted).

When reviewing a disability determination, the Court "is required to uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 340 (4th Cir. 2012). Courts do not conduct de novo review of the evidence. See Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986). Instead, our inquiry is limited to whether there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It "consists of more than a mere scintilla evidence but may be less than a preponderance." Id. The Court will not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." Id. (alterations omitted). Put simply, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Id. (alterations omitted).

"A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling." Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013). Thus, "[t]he record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." Id. If the Court has "no way of evaluating the basis for the ALJ's decision, 'the proper course, except in rare circumstances,

5

is to remand to the agency for additional investigation or explanation.'" Id. (quoting Florida Power & Light v. Lorion, 470 U.S. 729, 744 (1985)); see Brown v. Colvin, 639 F. App'x 921, 922 (4th Cir. 2016) (recognizing courts do not "min[e] facts from the [administrative] record to support the ALJ's decisions"). This ensures the ALJ can "adequately explain his reasoning . . . in the first instance." Radford, 734 F.3d at 296.

Plaintiff contends the ALJ denied him a full and fair hearing by failing to ensure he knowingly and intelligently waived his right to retain counsel, and by failing to fully inquire into all issues necessary for adequate development of the record. (Doc. No. 10-1). As explained below, the Court agrees, and thus remands this case to the ALJ for reconsideration.[1]

**A.     Waiver of Counsel**

Disability claimants have a statutory right to retain counsel during disability hearings. See 42 U.S.C. § 406. This right does not require the ALJ to insist that a claimant retain counsel, see Hartsell v. Bowen, 861 F.2d 264 (4th Cir. 1988) (table), but it does require the ALJ to ensure the claimant is informed of this right and is provided with sufficient information to knowingly and intelligently decide whether to retain counsel or proceed pro se, see, e.g., Thompson v. Sullivan, 933 F.2d 581, 584 (7th Cir. 1991); Edwards v. Sullivan, 937 F.2d 580, 586 (11th Cir. 1991); Sims v. Harris, 631 F.2d 26, 27 n.1 (4th Cir. 1980). A sufficient waiver requires a claimant to have some understanding of the consequences of waiving their statutory right and of proceeding pro se. See Drake v. Astrue, 443 F. App'x 653, 656 (2d Cir. 2011); see also Faretta v. California, 422 U.S. 806, 835 (1975) (recognizing although a litigant "need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made

---

[1] Plaintiff asserts a host of additional errors, but because the Court finds that Plaintiff was denied his right to a full and fair hearing, the Court declines to address those alleged errors at this time.

6

aware of the dangers and disadvantages of self-representation").

Here, the Court finds that Plaintiff did not knowingly and intelligently waive his right to retain counsel. At the beginning of the hearing, Plaintiff asked the ALJ whether he could simply "get" an attorney later if he was "denied" benefits. (Tr. 34). Rather than apprising Plaintiff of the consequences of an adverse determination in the instant proceeding, the ALJ simply said "[t]hat's correct" and again asked Plaintiff whether he was "prepared to go forward today without representation." (Id.). Plaintiff was equivocal at best, responding "I certainly hope so. I don't know what to expect, I'm just winging it." (Id.). The ALJ inquired no further.

Further compounding Plaintiff's absence of legal representation was "his obvious lack of understanding of the evidence necessary to develop the critical issues." Marsh v. Harris, 632 F.2d 296, 300 (4th Cir. 1980). For example, when the vocational expert classified Plaintiff's past job as a "numerical control tool programmer" with a "DOT code of 007.167-018," Plaintiff asked the expert to repeat the code and asked whether that code was listed "with Ash County or Department of Transportation locally." (Tr. 48). Rather than explain that the code was provided by the Dictionary of Occupational Titles, the ALJ simply responded, "Yes, yes, could you repeat the DOT number for the occupation." (Id.).

In sum, Plaintiff's testimony confirms he was unaware of the disability determination process and the consequences of the ALJ's decision. Because the ALJ failed to enlighten him, the Court finds that Plaintiff did not knowingly and intelligently waive his right to retain counsel.[2]

---

[2] To be sure, a claimant can be apprised of the right to retain counsel through a written waiver. See Jozefyk v. Berryhill, 923 F.3d 492, 497 (7th Cir. 2019); Candelaria ex rel. S.W. v. Comm'r of Soc. Sec., No. CIV. SAG-11-3004, 2013 WL 1316121, at *2 (D. Md. Mar. 27, 2013). Plaintiff purportedly signed a waiver at the hearing, but the Government conceded that waiver is not in the record. Thus, the Court cannot ensure that this written waiver was knowing and intelligent.

7

B.     **Duty to Explore**

"Unlike their colleagues in other agencies, Social Security ALJs are not simply arbiters, but also inquisitors." Gray v. Apfel, 191 F.3d 447 (4th Cir. 1999) (table). Therefore, the ALJ "has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely only on the evidence submitted by the claimant when that evidence is inadequate." Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986). When a claimant proceeds pro se, ALJs also have "a duty to assume a more active role in helping claimants develop the record." Craig v. Chater, 76 F.3d 585, 591 (4th Cir. 1996) (quoting Sims, 631 F.2d at 28). In other words, pro se claimants are "entitled to the sympathetic assistance of the ALJ to develop the record." Crider v. Harris, 624 F.2d 15, 16 (4th Cir. 1980).

Here, the ALJ failed to take an active role to ensure the record was meaningfully developed. Plaintiff highlights several avenues where this failure manifested, but one is particularly noteworthy. After recognizing that Plaintiff was medically diagnosed with gastritis on proton pump inhibitor, hiatal hernia, and colonic polyps, the ALJ determined these diagnoses were "not shown to be severe" because "the sparse medical record does not substantiate these conditions as affecting [Plaintiff]'s ability to work." (Tr. 17). The record is devoid of any suggestion that the ALJ attempted to substantiate the "sparse" record in order to properly evaluate whether these diagnosed disabilities were severe. For example, there is no evidence that the ALJ contacted the diagnosing physicians. See 20 C.F.R. § 416.920b(b)(2). Nor was Plaintiff asked to undergo additional consultative examinations. See id. Nor did the ALJ elicit testimony from Plaintiff, which could establish the intensity and severity of such symptoms. See id. Put simply, the ALJ's "failure to ask further questions and to demand the production of further evidence . . . amounted to neglect of [her] duty to develop the evidence." Cook, 783 F.2d at 1173.

### C. Resulting Prejudice

"It is firmly established that, even though the record as it is presented to the Court may contain substantial evidence to support the [disability] decision, the Court may still remand for the taking of additional evidence where the [ALJ] has failed to explore all relevant facts and where the absence of counsel appears to have prejudiced a pro se claimant." Hartsell, 861 F.2d at 264; see Walker v. Harris, 642 F.2d 712, 714 (4th Cir. 1981) (same); Marsh, 632 F.2d at 300. To sufficiently demonstrate prejudice, the claimant must show that the Commissioner's decision "might reasonably have been different had that evidence been before her when her decision was rendered." Sims, 631 F.2d at 28 (alterations omitted); see also Camp v. Massanari, 22 F. App'x 311 (4th Cir. 2001) (citing Newton v. Apfel, 209 F.3d 448, 458 (5th Cir. 2000)); Debty v. Saul, No. 1:18-CV-00344-MOC, 2019 WL 4594179, at *4 (W.D.N.C. Sept. 20, 2019).

With his summary judgment motion, Plaintiff presented additional physician notes documenting some of the symptoms of these additional impairments. Those notes indicate that Plaintiff "reports persistent reflux, regurgitation and heartburn," as well as "nonproductive cough and fevers . . . [and] chronic shortness of breath." (Doc. No. 10-2 at 5). Without this additional symptom information, "it is impossible to tell whether [Plaintiff] meets the requirements in the list of impairments." Cook, 783 F.2d at 1173. Because such information might reasonably lead to a different result, the Court finds that Plaintiff has demonstrated sufficient prejudice to warrant remand for reconsideration.

**ORDER**

**IT IS, THEREFORE, ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. No. 10) is **GRANTED**, and the Commissioner's Motion for Summary Judgment (Doc. No. 11) is **DENIED**. Pursuant to the power of this Court to enter a judgment affirming, modifying, or reversing the decision of the Commissioner under 42 U.S.C. § 405(g), the final decision of the ALJ is **REVERSED**, and this case is hereby **REMANDED** for further proceedings consistent with this opinion.

Signed: November 26,

Max O. Cogburn Jr
United States District Judge